UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 19-352

| | |
|---|---|
| GINA ANN INFINGER JONES, Personal Representative for the Estate of John Robert White Jr.; GINA ANN INFINGER JONES, as Natural Guardian of SHYANN AUTUMN WHITE; ASHLYN WHITE; CRYSTAL WHITE STARR; and BEULAH PEELS WHITE;<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF KINGS MOUNTAIN; KINGS MOUNTAIN POLICE DEPARTMENT; JONATHAN PRICE, in his individual capacity; and JONATHAN PRICE, in his capacity as a Kings Mountain Police Officer;<br><br>    Defendants. | **COMPLAINT** |

COMES NOW Plaintiffs the Estate of John Robert White, Shyann Autumn White, Crystal White Starr, and Beulah Peels White, by and through undersigned counsel and pursuant to the North Carolina Rules of Civil Procedure and complains of Defendants Town of Kings Mountain ("Kings Mountain"), Kings Mountain Police Department ("KPMD"), and Jonathan Price ("Price"):

## PARTIES

1. Plaintiff Gina Ann Infinger Jones ("Jones") is the wife of John Robert White Jr. ("White"), the personal representative of the Estate of John Robert White Jr., and natural guardian of Shyann Autumn White.

2. Plaintiff Shyann Autumn White is White's biological minor daughter.

1

3. Plaintiff Ashlyn White is White's biological daughter.

4. Plaintiff Crystal White Starr is White's biological sister.

5. Plaintiff Beulah Peels White is White's biological mother.

6. Defendant City of Kings Mountain is a municipality located in both Cleveland and Gaston Counties.

7. Defendant KMPD is a Department of the City of Kings Mountain.

8. Upon information and belief, Defendant Price is a citizen and resident of the Western District of North Carolina, North Carolina. Price is an employee and officer of KPMD.

## JURISDICTION AND VENUE

9. This case is brought, in part, pursuant to 42 U.S.C. § 1983. This Court therefore has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332(a)(3).

10. This Court has personal jurisdiction over Defendants.

11. Venue is proper in this Court under 28 U.S.C. § 1391, since all relevant events to Plaintiffs' claims occurred in the Western District of North Carolina.

## FACTUAL ALLEGATIONS

12. White was married to Jones. They have two daughters, Plaintiffs Shyann Autumn White and Ashlyn White.

13. In February 1997, White was arrested on drug charges. He was incarcerated in federal prison on those charges from January 1999 through May of 2005. Price expressed to family and friends that he would never go back to prison, telling his wife that he would shoot himself before he would ever go back.

14. At approximately 3:30 a.m. on Saturday, February 24, 2018, White was pulled over by Defendant Price on allegations of narcotics possession. In violation of departmental policy,

2

Defendant Price failed to ensure that his body camera was functioning that evening. As a result, his camera failed to record the incident alleged in this Complaint.

15. After he was stopped by Defendant Price, White sent a text message to his wife, Jones, to tell her that he loved her and their children.

16. Upon information and belief, White was agitated, nervous, and morose when he was pulled over by Defendant Price, frisked and handcuffed by Defendant Price, and placed in the back of Defendant Price's squad car.

17. It was well-known in the community that White was having family problems at the time immediately before his arrest.

18. Upon information and belief, Defendant Price knew during the stop that White was a convicted felon.

19. Upon information and belief, the early-morning hours, the threat of significant additional jailtime, and the increased possibility that White was under the influence of a controlled substance due to the suspicion of narcotics possession were sufficient factors for Defendant Price to reasonably foresee that White would constitute a threat to himself or Defendant Price.

20. Furthermore, suicides by detainees in patrol cars are well-reported.[1]

---

[1] *See, e.g.*, Billy Gunn, *Experts: Suicide of Handcuffed Man in Squad Car Rare, but Not Unique*, The Acadiana Advocate (Sept. 1, 2014), https://www.theadvocate.com/acadiana/news/article_adeda750-6d26-5e5d-a5f9-dcb3de417bbd.html; Carimah Townes, *Police Say a Handcuffed, Suicidal Man Shot Himself in the Head*, ThinkProgress.org (Jan. 9, 2017), https://thinkprogress.org/austin-police-say-suspect-shot-himself-in-the-back-of-a-police-car-d93dd749d5b/; Charlene Muhammad, *Suicide While Handcuffed*, The Final Call (Aug. 15, 2012), http://www.finalcall.com/artman/publish/National_News_2/article_9116.shtml; Jeff Branscome, *Suicidal Man Shoots Himself While Handcuffed in Back of Spotsylvania Sheriff's Office SUV*, Fredricksburg.com (Sept. 10, 2018), https://www.fredcricksburg.com/news/crime_courts/suicidal-man-shoots-himself-while-handcuffed-in-back-of-spotsylvania/article_eb16f599-06f3-517d-9629-2b4be70f125c.html; Kelly McLaughlin, *Virginia Officials Say a Woman Shot Her Self in the Face While Handcuffed During a Traffic Stop*, Insider (Mar. 18, 2019), https://www.insider.com/sarah-wilson-committed-suicide-handcuffed-chesapeake-police-2019-3; Latifah Muhammad, *Ohio Police Claim Teen Committed Suicide While Handcuffed in the Back of a Squad Car*, VIBE (Aug. 30, 2017) https://www.vibe.com/2017/08/ohio-police-xavier-mcmullen-suicide-claim-handcuffed-squad-car; *Handcuffed Teen "Shot Himself" in Back of Cop Car*, New York Post (Jan. 11, 2014), https://nypost.com/2014/01/11/handcuffed-teen-shoots-self-in-back-of-cop-car/; Rebecca Everett, *A Handcuffed Man Killed Himself with a Cop's Gun. 6 Months Later, Officials Still Won't Say What Went Wrong*, NJ.com (Jan 9, 2019),

21. Defendant Price should have taken precautions to ensure that White was unable to harm himself while detained.

22. The purpose of handcuffing a person when taking them into custody is, in part, to protect the detainee from hurting himself. It is easier for that to occur if the detainee is handcuffed behind his back.

23. The purpose of frisking a detainee is, in part, to discover any weapons or contraband on that person's body so the detainee cannot use it to hurt himself.

24. Leaving a detainee alone in a squad car without having first done everything to ensure that the detainee is not able to hurt himself increases the likelihood that the detainee will be able to hurt himself.

25. Upon information and belief, KMPD officers, including Defendant Price, are required to perform a thorough search of any suspect to discover any weapons they may have on their person.

26. Despite the risk that White posed to himself and others, Defendant Price failed to perform a reasonable search of White and failed to locate a .45-caliber handgun that White was wearing in a holster at his waist. A .45-caliber handgun is large enough that it should have been discovered if Defendant Price had conducted a reasonable search of White's person.

27. Furthermore, Defendant Price handcuffed White in front of his body, rather than behind his back, providing White with full access to his handgun.

---

https://www.nj.com/news/2019/01/a-handcuffed-man-killed-himself-with-a-cops-gun-6-months-later-officials-still-wont-say-what-went-wrong.html; Tom Giambroni, *Jason Miller Shooting Death*, C.C.F.H.V. Inc. (Mar. 13, 2009), http://www.ccfhv.com/2009/03/jason-miller-shooting-death.html; Gabrielle Banks, *Jury Weighs Lawsuit in Suicidal Teen's Shooting Inside Squad Car*, Chron (June 14, 2016), https://www.chron.com/news/houston-texas/article/Family-to-jury-Harris-County-responsible-for-8141713.php

4

28. Price was then transferred from Defendant Price's patrol car to another patrol car and was frisked again by another officer of KMPD. The second officer also failed to locate White's .45-caliber handgun.

29. Shortly after White's arrest, Defendant Price left White unattended in his squad car within the sallyport area of the Kings Mountain police department. Defendant did not monitor White during this time, despite the risk of self-harm posed by individuals in custody.

30. While he was sitting unsupervised in Defendant Price's patrol car, White pulled out his handgun while sitting in the back of and shot himself in the head. White never regained consciousness and died on February 28, 2018.

## FIRST CLAIM FOR RELIEF
### (42 U.S.C. § 1983: Deliberate Indifference to Citizens' Right not to Be Subject to Unreasonable Searches)

31. Plaintiffs incorporate all allegations made in this Complaint as though they have been fully set forth here.

32. The United States' Constitution protects citizens against unreasonable searches.

33. A reasonable search of White would have uncovered the handgun at White's waist.

34. Considering that more than one officer frisked White and missed the handgun, KMPD officers have a pattern, practice, or custom of performing unreasonable searches that fail to uncover deadly weapons.

35. Furthermore, upon information and belief, KMPD has a policy, practice, and custom of failing to train its officers on how to conduct a reasonable search to locate weapons.

36. If Defendant Price had been adequately trained, he would have performed a reasonable search and discovered White's handgun.

37. Furthermore, if Defendant Price had been trained to provide reasonable monitoring of detainees while in custody, he would have been able to prevent the suicidal White from taking his own life.

38. The obvious consequence of failing to reasonably search detainees for weapons and of continuing a deficient training strategy is that KMPD officers are placed in situations during which the constitutional violations described in this Complaint would result. As such, these policies make it predictable that the violations alleged here will occur. Such a failure to provide such training constitutes deliberate indifference to the risk of suicide inherent in pretrial detainees.

39. The policies designated above caused the deprivation of White's constitutional rights and injuries by Price, and proximately caused White and the other Plaintiffs to suffer damages, including White's death.

## SECOND CLAIM FOR RELIEF
**(42 U.S.C. § 1983: Deliberate Indifference to Risk of Serious Bodily Harm)**

40. Plaintiffs incorporate all allegations made in this Complaint as though they have been fully set forth here.

41. The Fourteenth Amendment requires law enforcement agencies to protect detainees from physical harm while they are in custody, including from the known risk of suicide.

42. KMDP and Defendant Price knew, or should have known, of the risk of detainees committing suicide while in custody if they are permitted to keep weapons on their bodies.

43. Despite knowing that suicides can and do occur while a suspect is in custody, upon information and belief, KMPD has not implemented any policies to recognize and deal with this dangerous situation. Such a failure to provide such training in light of the likelihood of suicide while in custody constitutes deliberate indifference to the risk of suicide inherent in pretrial detainees.

44. As such, KMPD has been deliberately indifferent to the risk that a detainee may commit suicide in custody and in squad cars.

45. White and the other Plaintiffs have been harmed by White's death.

## THIRD CLAIM FOR RELIEF
### (Wrongful Death – Against All Defendants)

46. Plaintiffs incorporate all allegations made in this Complaint as though they have been fully set forth here.

47. Defendant Price was under a duty to provide for the safety and protection of White while White was in the custody of the KMPD. Upon information and belief, KMPD has a written policy that mandates that an arresting officer is responsible for the safety and protection of an arrested person while in KMPD custody. Upon information and belief, KMPD also has a policy that mandates that the arresting officer is responsible for the security of the personal property in the arrested person's possession at the time fo the arrest.

48. By negligently frisking White and handcuffing White in front, instead of behind his back, Price and the KMPD failed to provide for White's safety and protection. These failures constituted a breach of Price's and KMPD's duty to White.

49. Upon information and belief, Kings Mountain has waived sovereign immunity through the purchase of liability insurance.

50. As a result of Price and KMPD's breaches, White and the other Plaintiffs have been injured in an amount exceeding $25,000.00.

WHEREFORE, Plaintiffs pray:

1. For judgment in favor of Plaintiffs and against Defendants;

2. For compensatory damages;

7

Case 3:19-cv-00352-KDB-DSC   Document 1   Filed 07/22/19   Page 7 of 8

3. For all damages recoverable for White's wrongful death under N.C. Gen. Stat. § 28A-18-2;

4. For attorneys' fees pursuant to 42 U.S.C. 1988;

5. Trial by jury;

6. Such other costs and attorneys' fees as allowed by law;

7. Such other and further relief as the Court deems just and proper.

This the 22 day of July, 2019.

Andrew L. Fitzgerald
N.C. State Bar No. 31522
Lee D. Denton
N.C. State Bar No. 47695
FITZGERALD LITIGATION
119 Brookstown Avenue, Suite 402
Winston-Salem, NC 27101
Telephone: 336-793-4365
Fax: 336-793-4696
andy@fitzgeraldlitigation.com
lee@fitzgeraldlitigation.com